SO ORDERED.

Dated: April 5, 2018

*Daniel P. Collins*

**Daniel P. Collins, Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| **ERLING S. CALKINS and ELAINE S. CALKINS,** | Case No: 3:13-bk-08354-DPC |
| Debtors. | **UNDER ADVISEMENT RULING RE THIRD AND FINAL APPLICATION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS** |
| | [NOT FOR PUBLICATION] |

Before the Court is the Third and Final Application ("Final Application") for allowance and payment of $17,398 in fees and $134.32 in costs sought by the law firm of Davis Miles McGuire Gardner ("DM"). Erling S. Calkins and Elaine S. Calkins ("Debtors") challenge these fees claiming, among other things, that DM failed to seek to enforce a settlement agreement ("Settlement") with Springleaf Home Equity, Inc. ("Springleaf"), a creditor secured by Debtors' property located at 12805 Chewbee Lane, Flagstaff, Arizona 86004 ("Chewbee Property"). Debtors claim that DM's failure to gain this Court's enforcement of the Settlement damaged Debtors in the amount of $48,850, which amount must be recouped against the fee award sought by DM thereby fully eliminating any amounts which might otherwise be owed by Debtors to DM. The Court now grants DM's Final Application in the amount of $15,000 and directs Debtors to promptly pay such amount to DM.[1]

---
[1] This Order sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Rules of Bankruptcy Procedure.

## I. BACKGROUND

1. Debtors filed their voluntary chapter 11 petition on May 16, 2013, and filed an application to employ DM on May 21, 2013 (DE 6).[2] The Court entered an order approving the employment of DM on June 14, 2013 (DE 23).

2. DM filed its first request for fees of $15,273.50 and costs of $1,431.43 on November 15, 2013 ("1st Fee Application") (DE 55). Debtors noted their approval of this request. See DE 55 at 5, ¶ 12. The Court approved DM's 1st Fee Application on December 7, 2013 (DE 76).

3. DM filed its second request for fees of $16,252 and costs of $203.95 on May 15, 2014 ("2nd Fee Application") (DE 122). Again, Debtors approved this request. See DE 122 at 5, ¶ 13. The Court approved DM's 2nd Fee Application on June 17, 2014 (DE 130).

4. DM filed a motion to withdraw as Debtors' counsel of record (DE 185). The Court granted DM's motion on May 20, 2015 (DE 187).

5. More than two years after their withdrawal, DM filed its Final Application for fees of $17,398 and costs of $134.31 (DE 499). Not only did Debtors not approve this request, they filed an Objection ("Objection") to the Final Application on August 21, 2017 (DE 510). DM filed a Reply ("Reply") in support of their Final Application on September 6, 2017 (DE 515). Debtors filed a Response ("Response") to the Reply on September 12, 2017 (DE 525). Coconino County filed a notice of non-opposition to the Final Application on September 22, 2017 (DE 537). DM filed a Motion ("Motion") to strike Debtors' Response on September 22, 2017 (DE 539). A hearing was held on September 29, 2017, concerning the Final Application and Objection. At the hearing, the Court directed Debtors and DM to file simultaneous opening briefs by October 13, 2017, with responsive briefs due October 25, 2017.

---

[2] "DE" refers to docket entries in the administrative file concerning this chapter 11 case.

6. On October 13, 2017, Debtors filed their opening brief (DE 554) and DM filed its opening brief (DE 558). On October 25, 2017, Debtors filed their responsive brief (DE 591) and DM filed its responsive brief (DE 592). The Court held oral argument on the Final Application on October 27, 2017 (DE 607).

7. The Court held the Debtors were estopped from challenging the allowance or payment of the 1st and 2nd Fee Applications. DE 612.

8. Although Debtors made it clear they were not asserting a cause of action for legal malpractice against DM, they did contend DM's actions and inactions caused them damage and that damage should be recouped against the amounts sought by DM in its Final Application. As there were genuine fact issues raised by the parties' briefs, this Court set a trial for February 16, 2018, in Flagstaff, Arizona.

9. The parties filed their initial Joint Pre-Trial Statement ("JPTS") on December 7, 2017 (DE 642), and an Amended Joint Pre-Trial Statement ("Amended JPTS") on February 1, 2018 (DE 670).

10. At the February 16, 2018 trial on DM's Final Application, the Court heard testimony from Mr. Calkins, the Calkins' current lawyer, Allan NewDelman, and DM lawyer, Aubrey Thomas. Mr. NewDelman's testimony suggested neither he nor the Debtors could have enforced the alleged Settlement with Springleaf because Springleaf transferred its claim and lien rights on the Chewbee Property to Westvue, a bona fide purchaser ("BFP") entitled to take that claim free of the alleged Settlement. The Court asked the parties to brief this BFP issue. Debtors filed their brief on March 12, 2018, at DE 682. DM's brief was filed at DE 683.

11. On March 31, 2018, this Court entered its order granting the costs portion of the Final Application and directing the payment of such costs and unpaid portions of the 2nd Fee Application. DE 679.

12. The Court heard closing arguments in Flagstaff on March 23, 2018. At oral argument and in his brief, Debtors' counsel clarified that it was holder-in-due course law, not BFP principles, which enabled Westvue to take the Chewbee Property note and deed of trust free of the alleged Settlement with Springleaf. This Court ruled from the bench on March 23, 2018, that Debtors had not sustained their burden of demonstrating that the elements of a holder-in-due course defense applied to the facts of this case. The Court then took under advisement the balance of the issues pertinent to the Final Application.

## II. <u>JURISDICTION</u>

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and 1334, and Bankruptcy Rule 9014. *See also* Amended JPTS (DE 670, at 2).

## III. <u>ISSUE</u>

Whether this Court should deny all or a portion of the Final Application because DM's fees were not wholly reasonable or necessary under the circumstances of this case.

## IV. <u>LAW</u>

Section 330 of the Code[3] states:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103-
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
> (B) reimbursement for actual, necessary expenses,

---

[3] Unless indicated otherwise, statutory citations herein refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

(2) the court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for –

(i) unnecessary duplication of services; and

(ii) services that were not –

    (I) Reasonably likely to benefit the debtor's estate; or

    (II) Necessary to the administration of the case.

Once services are determined to be compensable, the applicant must demonstrate that his work was necessary and reasonable. *3 Collier On Bankruptcy* ¶ 330.03[2], 330-28 (Richard Levin & Henry J. Sommer, eds., 16th ed. 2017). Here, there is no challenge to whether DM's fees are "compensable." The question is whether DM's fees were actual, necessary and reasonable under the circumstances of this case. *In re Auto Parts Club, Inc.,* 211 B.R. 29, 33 (9th Cir. BAP 1997).

Pursuant to § 330, the Court should objectively look to whether the fees were reasonable, necessary, and potentially beneficial to the bankruptcy estate at the time they were incurred. *In re Mednet*, 251 B.R. 103, 107–08 (B.A.P. 9th Cir. 2000). "A bankruptcy court also must examine the circumstances and the manner in which services are performed and the results achieved in order to arrive at a determination of a reasonable fee allowance." *In re Mednet*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000).

The burden of proof is on DM to show that its fees and expenses are reasonable. See Code § 330(a) and *In re Nakhuda*, 544 B.R. 886 (B.A.P. 9th Cir. 2016).

> In determining the amount of reasonable compensation, the court considers the nature, extent, and value of the professional's services, taking into account all relevant factors, including whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case and whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed.

*In re Dimas, LLC*, 2009 WL 7809032, at *5 (B.A.P. 9th Cir. Feb. 25, 2009).

## V. ANALYSIS

### A. The Chewbee Property Secured Claim.

The heart of Debtors' Objection to the Final Application lies in their belief that DM failed to gain enforcement of the Settlement negotiated in September 2014 between DM lawyer, Ms. Thomas, and Springleaf lawyer, Douglas V. Drury. An unsigned copy of the Settlement was marked as Exhibits H, I, O, Q and Exhibit 6. In essence, the Settlement would have settled Springleaf's stay lift motion[4] on its 1st lien position against

---

[4] July 18, 2014, DE 141.

the Chewbee Property by reducing the note balance from $164,488.41 with interest at 11.95%[5] to $100,000 to be paid at 3% over 20 years.

DM contends the Settlement was always enforceable. Debtors' present counsel contends the Settlement was enforceable until Springleaf transferred the debt. Mr. Calkins testified the Settlement was not enforceable. This Court need not determine whether the Settlement was enforceable. If it was not enforceable at any point in time, DM cannot be blamed for its failure to seek this Court's approval of the Settlement. If the Settlement was enforceable, it could have been enforced by a motion from DM, the Debtors (when self-represented) or Mr. NewDelman, unless the Settlement was enforceable against Springleaf but not its successor-in-interest, Westvue NPL Trust II ("Westvue").

At trial, Mr. NewDelman testified that he did not file a motion to enforce the Settlement because Westvue was a BFP of the Chewbee Property note and deed of trust and, therefore, took free of the Settlement terms. Mr. NewDelman's subsequent brief and oral argument clarified that it was not BFP theories but, rather, holder-in-due course principles which permitted Westvue to hold the Chewbee Property note and deed of trust free of the Settlement. As noted above, the Court resolved this issue in favor of DM.[6] Westvue, as the assignee of the Chewbee Property note and deed of trust, "acquired the rights previously held by the assignor." *Highlands Village Partner, LLC v. Bradbury & Stamm Const. Co.*, 195 P.3d 184, 219 Ariz. 147, 150 (Ariz. Ct. App. 2008). "An assignee steps into the shoes of her assignor. [It] 'can stand in no better position than the assignor' and '[a]n assignment cannot alter the defenses or equities of the third party.'" *K.B. v. State Farm Fire and Cas. Co.*, 941 P.2d 1288, 189 Ariz. 263, 267 (Ariz. Ct. App. 1997).

---

[5] *See* Springleaf's June 14, 2013 Proof of Claim #5. *See also* Exhibit 38 and Amended JPTS, at 3.

[6] The Court also determined the value of the Chewbee Property to be $150,000 for purposes of the Final Application. That determination is now irrelevant in view of the Court's ruling against Debtors on the holder-in-due course issue.

Accordingly, if the Settlement was enforceable, it could have been enforced by the Debtors while they were unrepresented or it could have been enforced by Debtors' current counsel. The damages claimed by Debtors as recoupment against the Final Application could not have been caused by DM and DM alone. The Debtors chose to resolve its issues with Westvue by accepting $9,250 from Westvue and then deeding the Chewbee Property to the creditor. See Ex 28 and 29, and DE 382. If this damaged the Debtors or their estate, they alone are to blame.

The Debtors did not roll the dice to see if they could realize the full benefits of the Settlement by seeking an order of the Court enforcing the Settlement. The Court now finds the Debtors' choice to resolve their issues with Westvue as they did was a self-inflicted wound if indeed a wound was caused at all.[7]

Having found Debtors failed to demonstrate DM's actions or inactions caused them damages in connection with this transaction involving the Chewbee Property and the secured obligations of Springleaf/Westvue, the Court now turns to the more mundane task of determining the reasonableness and necessity of DM's fees sought in its Final Application.

### B. Conflict of Interest.

Debtors' Objection to the Final Application initially referenced a possible conflict of interest involving DM. That conflict issue was never developed or pursued by Debtors. For this reason it need not now be addressed by the Court.

### C. Were DM's Fees Reasonable and Necessary?

---

[7] Mr. Calkins testified he paid three months of mortgage payments to Springleaf but all were returned to him. He also received post-petition rent on the Chewbee Property in the amount of $1,200 for 6 to 8 months while he paid approximately $5,000 in post-petition insurance and taxes. His closing brief claims the rent received was considerably smaller. Whatever the actual monetary benefit may have been, the nominal cost to carry the Chewbee Property appears to have been heavily outweighed by Debtors' income from and enjoyment of the Chewbee Property.

1. <u>Rates</u>. The Final Application notes that DM billed the Debtors on an hourly basis at rates ranging from $95/hour (legal assistant) to $350/hour (most senior lawyer). There is no issue raised as to the reasonableness of these rates. The Court finds such rates are reasonable in this District, including in Northern Arizona.

2. <u>Paralegal Work</u>. Debtors' Objection to the Final Application complained of certain time entries from 2013 which reflected lawyer rates charged on paralegal or legal assistant tasks. No other time entries were brought to the Court's attention. Since this Court has ruled that the 1st and 2nd Fee Applications could not be revisited by the Debtors, the Court need not address these 2013 time entries because the Final Application includes only time from May 14, 2014 through July 10, 2017.

3. <u>Specific Work Billed in the Final Application</u>. This Court is mildly concerned about the reasonableness and necessity of DM's work related to the Chewbee Property note and deed of trust. As best this Court can tell, DM billings reflect work on this issue on the following dates with the following charges:

| | |
|---|---|
| August 15, 2014 | 67.50 |
| September 11, 2014 | 67.50 |
| September 29, 2014 | 112.50 |
| October 13, 2014 | 67.50 |
| October 17, 2014 | 45.00 |
| November 17, 2014 | 67.50 |
| <u>December 16, 2014</u> | <u>112.50</u> |
| Total | 560.00 |

This work was all for naught. In fact, this work (or the incompleteness of the work) precipitated the controversy which is at the heart of Debtors' Objection. The Court hereby disallows $560 in fees sought by DM for their efforts on the Chewbee Property. It is of interest to the Court that DM did not log any billings after December 16, 2014 on

the Chewbee Property matter, yet Ms. Thomas testified she continued to hound Springleaf's lawyer about the Settlement well into the first quarter of 2015. The Court is not questioning Ms. Thomas' testimony but, rather, wondering why there are no time entries reflecting "no charge" for such efforts. Many bankruptcy lawyers enter time for every task pursued but then use their billing discretion if their efforts prove unhelpful. Here, DM's bills do not show a $0.00 charge on any time entry and the bills reflect only a $90 write down for all time charges in the Final Application. See DE 499-1, at 28 of 29. This nominal write down and no $0.00 charges suggest to the Court that there was very little quantitative or qualitative review of DM's billings.

In addition to the $560 fee reduction noted above, this Court will reduce DM's fee request of $17,398 by an additional $1,838 bringing the allowed fee amount to $15,000. This additional $1,838 reduction is made because, in reviewing the Final Application, this Court was left with the impression that, from November 2014 through March 2015, very little effort was made to advance Debtors' chapter 11 reorganization. Yes, there was activity by DM. Yes, there are billing entries. However, this Court feels that a more concerted and aggressive effort by counsel could have, in the long run, saved this estate legal fees. From November 2014 through March 2015, this Court has the sense that counsel was treading water, not digging in to complete the race.[8] The Court is well aware that the Debtors and DM were having attorney-client difficulties during some of that time frame, but counsel either needed to withdraw from this case or stay fully engaged so long as they were still hinged to the engagement. To be clear, this Court does not find a material performance breach by DM. Rather, the Court views this $1,838 reduction as a modest trimming of the DM Final Application due to what this Court perceives as a less than full throttle pursuit of this chapter 11 case during the time period in question.

---

[8] DM billed the efforts of two or three people in each of these months for total time entries as follows: November – 4.8 hours, December – 3.4 hours, January – 11.9 hours, February – 5.5 hours, and March – 2.9 hours.

## VI. CONCLUSION

DM's Final Application is approved in the amount of $15,000. Debtors shall promptly pay DM such amount.

**DATED AND SIGNED ABOVE.**

Copy of the foregoing mailed to
the following parties by the BNC:

Allan D. NewDelman
Roberta Sunkin
Allan D. NewDelman, PC
80 E. Columbus Ave.
Phoenix, AZ 8012

Pernell W. McGuire
Aubrey L. Thomas
Davis Miles McGuire Gardner
9 W. Cherry Ave., Suite B
Flagstaff, AZ 86001